## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

BOYD JOHNSON, MICHELLE STONE, Z.H., a minor, by and through his father and next friend, T.E.H., DWIGHT S. CENAC, JOHNNY ALFREDO MARTINEZ, and MICHAEL ANGELO ESPINOZA, individually, and on behalf of others similarly situated,

        Plaintiff,

vs.

WAL-MART STORES, INC.,

        Defendant.

_____/

**CLASS ACTION**

### CLASS ACTION COMPLAINT

**COME NOW**, Plaintiffs, BOYD JOHNSON ("Mr. Johnson") MICHELLE STONE ("Ms. Stone"), Z.H., a minor, by and through his father and next friend, T.E.H. ("Z.H."), DWIGHT S. CENAC ("Mr. Cenac"),   JOHNNY ALFREDO MARTINEZ ("Mr. Martinez") and MICHAEL ANGELO ESPINOZA ("Mr. Espinoza") (collectively "Plaintiffs") individually, and on behalf of others similarly situated, by and through the undersigned counsel, and sue WAL-MART STORES, INC. ("Walmart"), and as grounds thereof would allege as follows:

### INTRODUCTION

1.    Plaintiffs brings this class action individually and on behalf of all persons who have been injured while riding a bicycle negligently assembled at a Walmart store.

2.    Nearly 60 million Americans have been cycling in the past 12 months[1]. According

---

[1] https://www.statista.com/topics/1448/bicycle-industry-in-the-us/.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

to the National Bicycle Dealers Association, over 17 million bicycles and sales of over $6 billion were sold in the United States in 2014 and 2015, respectively[2]. Whereas consumers used to go to a specialty bike store to purchase a bicycle—that practice has been slowly disappearing over the past two decades. In 2001, there were 6,259 domestic specialty bicycle retail locations. By 2015, that number dropped nearly 40% to 3,790[3] and accounted for only 13% of the U.S. bicycle market in terms of unit sales[4]. In 2014, 75% of all bicycles sold in the U.S were sold by mass merchants such as Walmart, Target, and K-Mart[5].

    3.    With the growth of cycling has come the corresponding injuries. While the large amount of bicycle accidents has encouraged riders to wear helmets, knee-pads and to use other safeguards, little has been done by Walmart to ensure their bicycles are assembled properly and safe to use upon purchase. Walmart has already been sued multiple times on the grounds of improper bike assembly and media reports have highlighted this safety concern, yet injuries are still occurring due to the continuance of careless and sloppy in-house assembly of their bikes. Walmart should be marketing and selling bikes while taking seriously its responsibility for providing a safe product to its customers. The public rightfully and reasonably expects Walmart's bike assemblers to be trained in bike assembly and subject to approved safety inspections before Walmart places the bikes in the stream of commerce. Unfortunately, that is not the case. With over 3,500 stores in the United States selling assembled bikes to the public, Walmart is putting tens of thousands of children, teens and adults in harm's way every year due to its negligent and reckless bike assembly procedures.

    4.    This class action seeks to put an end to Walmart's negligent bike assembly policies

---

[2] http://nbda.com/articles/industry-overview-2015-pg34.htm.
[3] https://www.statista.com/statistics/215249/number-of-speciality-bicycle-retail-locations-in-the-us/.
[4] http://nbda.com/articles/industry-overview-2015-pg34.htm.
[5] https://www.statista.com/statistics/276046/bicycle-unit-sales-channel-of-distribution/.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

and to recover damages for those class members that have suffered injury due to Walmart's negligence.

## JURISDICTION

5.      This Court has jurisdiction over this action under 28 U.S.C. 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) members of the class of Plaintiffs are citizens of a State different from the Defendant; and (3) and there are more than 100 members in the Class.

6.      This Court has personal jurisdiction over Walmart because a substantial portion of the wrongdoings alleged herein occurred in Florida. Walmart also has sufficient minimum contacts with Florida, in that Walmart employs 109,849 associates in Florida, and has over 365 stores in the State of Florida, with a substantial portion of those stores located in this District[6].

7.      Venue in this District is proper because Mr. Johnson and Ms. Stone reside in this District, and because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391(b).

## PARTIES

8.      At all times relevant to this Complaint, Mr. Johnson, was an individual residing in this District who purchased a bicycle at a local Walmart store located in Broward County, Florida. Mr. Johnson honorably and bravely served his country as an United States Army 92Y Specialist, serving a tour in Korea/2nd ID in 2000, and in military intelligence as a member of the 513 MI Brigade.

9.      At all times relevant to this Complaint, Ms. Stone, was an individual residing in this District who purchased a bicycle at a local Walmart store located in Broward County, Florida.

---

[6] http://corporate.walmart.com/our-story/our-locations#/united-states/florida.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

10.     At all times relevant to this Complaint, Z.H., is a minor residing with his parents in Michigan, who purchased a bicycle at a Walmart store located in Livingston County, Michigan.

11.     At all times relevant to this Complaint, Mr. Cenac, was an individual residing in Florida who purchased a bicycle at a Walmart store located in Duval County, Florida.

12.     At all times relevant to this Complaint, Mr. Martinez, was an individual residing in North Carolina who purchased a bicycle at a Walmart store located in Mecklenburg County, North Carolina.

13.     At all times relevant to this Complaint, Mr. Espinoza, was an individual residing in Texas who purchased a bicycle at a Walmart store located in Denton County, Texas.

14.     At all times relevant to this Complaint, Defendant, Wal-Mart Stores, Inc., is a Delaware corporation conducting business within Florida and within this Judicial District.

15.     Wal-Mart Stores, Inc. is the parent company of Wal-Mart Stores East, L.P. which owns and/or controlled the local Walmart store where Mr. Johnson and Ms. Stone purchased their respective bikes.

## BACKGROUND AND GENERAL ALLEGATIONS

16.     Walmart serves nearly 260 million customers per week in its more than 11,500 retail units under 63 banners in 28 countries and e-commerce websites in 11 countries, and employs 2.3 million associates around the world — 1.5 million in the U.S. alone[7]. Walmart now offers customers six different store formats to choose from, ranging from the Supercenters of up to 260,000 square feet to the 15,000 square-foot Walmart Express stores to Walmart gas stations.

17.     For the fiscal year ended January 31, 2016, Walmart's total revenue was $482.1 billion[8].

---

[7] http://corporate.walmart.com/our-story.
[8] http://corporate.walmart.com/newsroom/company-facts.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

18.     Walmart offers an incredible array of products, including sports, fitness and outdoors equipment. As a part of its sports, fitness and outdoors section, Walmart offers for sale a large selection of bikes, from tricycles to 25-speed mountain bikes, and everything in between, including road bikes, cruiser bikes, fat tire bikes, electric bikes, recumbent bikes, folding bikes, mountain bikes, and hybrid bikes[9].

19.     Walmart sells bicycles from some of the most popular bike companies including, Schwinn, Mongoose, Huffy, Kent, and Roadmaster.

20.     Upon information and belief, the bicycles  are sold to Walmart in a semi-assembled state, complete will all parts necessary for assembly as well as instructions for assembly.

21.     Walmart offers and advertises "free in-store bike assembly" and sells its bikes in an assembled and ready-to-ride state.

22.     In the past, Walmart contracted with third-party vendors to assemble its bikes and to bring the assembled bikes to its store. Upon information and belief, in or about 2014, in an effort to save money, Walmart began assembling its bikes in-house, using its own employees.

23.     Upon information and belief, Walmart's bike assemblers are the same employees assembling Walmart's patio furniture and other products in the stores.

24.     Upon information and belief, Walmart's bike assemblers received inadequate training with respect to assembling bikes.

25.     Upon information and belief, Walmart's bike assemblers do not have accessible or do not fill in a checklist upon completing a bicycle assembly.

26.     Assembly checklists are crucial to maintaining safety standards and are readily available at no costs from a multitude of suppliers such as Spin Doctor[10], a portion of which is

---

[9] https://www.walmart.com/cp/bikes/1081404.
[10] https://www.performancebike.com/images/performance/web/PDFs/09_SpinDr_BuildChecklist.pdf.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

copied below.



**GENERAL INSPECTION**
1 ☐ Frame/fork checked for damage and scratches.
2 ☐ Parts inventoried for missing or incorrect parts.

**WHEEL SYSTEMS**
3 ☐ Wheels pre-stressed and trued until stable at + or - .5 mm.
4 ☐ Check hubs for correct adjustment.
5 ☐ Wheel reflectors mounted opposite valve stems.
6 ☐ Quick release levers correctly secured.

**DRIVE TRAIN SYSTEM**
7 ☐ Crank arm bolts securely tightened (315in/lbs).
8 ☐ Chainwheel bolts secured.
9 ☐ Chain checked for proper length, protruding rivets, and tight links.
10 ☐ Grease pedal axle or cranks pedal threads.
11 ☐ Chain lubed with bike chain specific lubrication.

**STEERING SYSTEM**
12 ☐ Headset adjusted.
13 ☐ Headset locknut or ahead stem secured (for ahead stem: 85in/lbs).
14 ☐ Brake lever rotational alignment set 30-45 degrees down from horizontal.
15 ☐ Check brake lever security by load-testing.
16 ☐ Handlebar binder bolt greased at head and threads.
17 ☐ Stem bolt, wedge and interior of steerer tube greased.
18 ☐ Handlebar binder bolt secured.
19 ☐ Stem secured and minimum insertion line not showing.
20 ☐ Load test the handlebars and stem.

27.     Had the Walmart employees that assembled the Plaintiffs' bikes followed a checklist such as the one above—Plaintiffs' injuries would never have occurred.

28.     Moreover, there are many companies that offer training services and certification for bike assemblers. For example, Barnett Bicycle Institute offers training and exam administration for the BSE (Bicycle Standard of Excellence) Level 1 Certification[11] and BSE Level 2 Certification.

29.     United Bicycle Institute is another company that offers training and certification for bike assemblers and offers a Certified Bicycle Technician program[12].

30.     Upon information and belief, Walmart could have trained and certified its bike

---

[11] http://www.bbinstitute.com/course-overview/bse-level-1-certification.
[12] http://www.bikeschool.com/home.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

assemblers for less than $30.00, but chose not to. Moreover, Walmart could have purchased or created training videos for its bike assemblers but chose not to and chose not to make use of companies that offer bike assembly training via on-demand videos on the Internet.

31.    Upon information and belief, Walmart's bike assemblers are so pressured to assemble bikes as fast as they can to meet the demand of customers, that they do not have time to properly inspect the bikes after assembly and fail to inspect even the most basic safety features, such as making sure that bolts are properly tightened or that brakes and tires are properly installed.

32.    Upon information and belief, Walmart and its bike assemblers do not follow the procedures a reasonably prudent store would follow prior to placing assembled bikes for sale to the public.

33.    Upon information and belief, Walmart does not have a procedure in place for an assembled bike to be inspected by a certified or properly trained third-party or in-house inspector before placing the bike on the sales floor.

34.    At the time of sale, the subject bikes were advertised and placed on display in the Walmart store as pre-assembled bicycles.

35.    Not all major retailers sell bikes pre-assembled. For example, Toys "R" Us offers a bike assembly service which costs an additional $10.00, and requires 24-hour notice[13].

36.    However, Walmart sold and delivered the assembled bikes to Plaintiffs in such a state that any prudent person would have reasonably believed that the bicycles were assembled properly, would operate effectively, and provide for reasonably safe use.

**Factual Allegations as to Plaintiff Boyd Johnson**

37.    On or about November 7, 2016, Mr. Johnson purchased a bicycle from Walmart

---

[13] http://www.toysrus.com/shop/index.jsp?categoryId=28355216.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

Store #4617, located at 1199 S. Federal Highway in Pompano Beach, Florida, and.

38.     One Wednesday morning just a couple of weeks later, on November 23, 2016, the weather was clear and beautiful, and Mr. Johnson decided to go for a ride on his new bike.

39.     Mr. Johnson has not made any adjustments or significant changes in condition to the bike since he purchased it from Walmart, aside from adjusting the seat height.

40.     Mr. Johnson was riding his bike in the bike lane on North Ocean Blvd. ("A1A") in Boca Raton, along Red Reef Park, south of Spanish River Blvd.

41.     Mr. Johnson was heading south, with traffic to his left and the swale to his right. As he was pedaling along at approximately 15 m.p.h., the handlebars on his new bike suddenly became loose inside their bolt and shifted and slid completely to the right.

42.     Mr. Johnson had been steadily and forcefully peddling while stabilizing himself on the handlebars by holding on with both hands as the normal way of riding a bicycle. The 6mm bolt that was not properly installed when assembled by Walmart came loose, allowing the handlebars to freely slide under the pressure of Mr. Johnson's weight[14].

43.     Because Mr. Johnson was stabilizing his body on the handlebars, when they became loose and slid to the right, Mr. Johnson lost all control of his bike and was propelled forward and over the front of the bike.

44.     When Mr. Johnson was propelled over the handlebars, he launched forward striking the pavement with his face, shoulder and right side of his body.

45.     Mr. Johnson sustained injuries to his shoulder and right side of his body as a result of the handlebars becoming loose.

46.     The handlebars became loose on Mr. Johnson's bicycle as a direct and proximate

---

[14] Mr. Johnson is 6' 1" and weighs approximately 205 pounds.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

cause of Walmart's negligent training of its bike assembly staff, negligent bike assembly procedures, and negligent bike-safety policies.

47.     Had the handlebars shifted to the left instead of to the right, Mr. Johnson would have most likely landed in the path of traffic and would likely have been far more severely injured if not killed by the steady flow of traffic.

### Factual Allegations as to Plaintiff Michelle Stone

48.     On or about the month of September, 2016, Ms. Stone purchased a bicycle from the Pembroke Pines Walmart Supercenter, located at 151 S.W. 184th Ave., Pembroke Pines Florida, 33029.

49.     On or about September 29, 2016, after only having ridden her bike just a few times, Ms. Stone took her bike for a ride on Spanish River Drive. As she crossed over a bridge and headed downhill, she began picking up speed, accelerating down the hill to approximately 25 m.p.h.

50.      As she attempted to apply the brakes to slow down, she realized to her horror that the brakes were not engaging, no matter how hard she squeezed. Ms. Stone was approaching a road and oncoming traffic and in a desperate attempt to save her own life, she veered to the side and fell onto the ground.

51.     As a result of the fall, Ms. Stone was injured. Besides for twisting her ankles, Ms. Stone injured her wrist and received lacerations and slashes to her wrist and other areas of her body. Additionally, her computer that was in her bag was flung and damaged as well.

52.     Following the fall, Ms. Stone took her bike to Pembroke Cycle for repair. When the bike was returned to Ms. Stone, the bike mechanic from Pembroke Cycle informed Ms. Stone that the brakes had not been assembled properly.

53.     The brakes failed on Ms. Stone's bicycle as a direct and proximate cause of

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

Walmart's negligent training of its bike assembly staff, negligent bike assembly procedures, and negligent bike-safety policies.

<b><u>Factual Allegations as to Plaintiff Z.H.</u></b>

54.     On or about the month of March, 2016, T.E.H. purchased a bike for his then 10 year-old son Z.H. as an Easter from the Walmart Supercenter located at 3850 E. Grand River Ave., Howell, Michigan 48843 (Store No. 1754).

55.     T.E.H. was happy when the time came to unveil the gift and Z.H. was thrilled with the new bike. As he sat down on the bike for the very first time, Z.H. began riding from the garage to the street, picking up speed as he went. As he approached the end of the long driveway, Z.H. attempted to turn left onto the road. However, as tried to turn, the handlebars came loose and jolted to the left side, which caused Z.H. to fall of the bike and onto the ground. The fall caused large lacerations and abrasions to Z.H.'s right knee and other parts of his body.

56.     Understandably, the blood flow caused Z.H. and his father who had come running over much concern and left Z.H. complaining about the pain.

57.     The handlebars came loose on Z.H.'s bicycle as a direct and proximate cause of Walmart's negligent training of its bike assembly staff, negligent bike assembly procedures, and negligent bike-safety policies.

<b><u>Factual Allegations as to Plaintiff Dwight S. Cenac</u></b>

58.     On or about July 30, 2017, Mr. Cenac purchased a bicycle from the Walmart Supercenter located at 11900 Atlantic Blvd. (Store No. 5054).

59.     On August 1, 2017, during just his second time riding the bike, Mr. Cenac was riding alongside his wife who had their baby strapped into a baby carrier on her bike. As they made their way along a bike path on Monument Road, the handlebars suddenly gave way and collapsed

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

downward, causing Mr. Cenac to lose control of his bike and veer into the retaining wall at the side of the bike path.

60.     Mr. Cenac's momentum caused him to "ride" the wall, severely scraping and bruising his left arm and left hand. Mr. Cenac was in great pain, but thankful that his only child had not been strapped onto his bike that day.

61.     The pain was so great that Mr. Cenac sought medical treatment for his wounds. The injury is causing continuing pain and discomfort to Mr. Cenac and hinders his day-to-day activities.

62.     The handlebars came loose on Mr. Cenac's bicycle as a direct and proximate cause of Walmart's negligent training of its bike assembly staff, negligent bike assembly procedures, and negligent bike-safety policies.

### Factual Allegations as to Plaintiff Johnny Alfredo Martinez

63.     On or about June 15, 2017, Mr. Martinez purchased a bicycle from the Walmart Supercenter located at 3240 Wilkinson Blvd, Charlotte, NC 28208 (Store No. 3371).

64.     A few days later, Mr. Martinez was riding his new bike down a hill on Brevard St. As he approached the intersection, he began squeezing the brakes in an attempt to slow the bike. To Mr. Martinez's horror, the brakes did not engage and the bike just kept picking up speed as he barreled toward oncoming traffic. As he was attempting to gain control of the bike, the from wheel came loose and began wiggling. Mr. Martinez lost control of the bike and ended up flying over the handlebars and landing on his left knee and left elbow.

65.     Mr. Martinez was taken to the emergency room at Mercy Medical Center by his friend and was diagnosed with a hip contusion and had his wounds cleaned. A s a result of the injuries, Mr. Martinez missed 3 days of work.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

66.     The brakes failed on Mr. Martinez's bicycle as a direct and proximate cause of Walmart's negligent training of its bike assembly staff, negligent bike assembly procedures, and negligent bike-safety policies.

**Factual Allegations as to Plaintiff Michael Angelo Espinoza**

67.     On or about February 13, 2017, Mr. Espinoza purchased a bicycle from the Walmart Supercenter located at 2750 W. University Dr., Denton, Texas 76201 (Store No. 4627).

68.     Just a few days later, on or about February 16, 2017, Mr. Espinoza took his new bike for a ride. As he headed downhill, he began picking up speed. As Mr. Espinoza rode towards the bottom of the hill, he attempted to apply the brakes to slow down, and when he did, the brakes locked up, and threw Mr. Espinoza off of his bike.

69.     As a result of the fall, Mr. Espinoza was injured. Mr. Espinoza received lacerations and puncture wounds to his right hand and other areas of her body. The fall was so severe that it caused Mr. Espinoza to wake up with feeling of nausea the next morning.

70.     Following the fall, Mr. Espinoza took his bike to Denton Bicycle Center for examination. The bike mechanic from Denton Bicycle Center informed Mr. Espinoza that the brakes had not been assembled properly.

71.     The brakes failed on Mr. Espinozas's bicycle as a direct and proximate cause of Walmart's negligent training of its bike assembly staff, negligent bike assembly procedures, and negligent bike-safety policies.

**Factual Allegations Common to all Plaintiffs**

72.     The injuries described above are not in any way uncommon for purchasers of bicycles from Walmart. Upon information and belief, similar injuries have been caused to consumers who purchased bicycles negligently assembled by Walmart in the remaining 46 states.

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

73.     To demonstrate the widespread nature of this problem, an investigative report highlighting the safety issues with bicycles assembled at big-box stores was broadcast on December 2, 2014, on Local 6 in Orlando Florida[15]." The report included bicycles poorly assembled by Walmart. Another investigative report highlighting the safety issues with bicycles assembled at big-box stores was broadcast on Fox 31 in Denver, Colorado[16]."

74.     All conditions precedent to the filing of this action have occurred or have been waived.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs brings this suit as a class action on behalf of themselves and on behalf of other similarly situated pursuant to Fed. R. Civ. P. 23(a), and Fed. R. Civ. P. 23(b)(3) (the "Class"). The proposed Class consists of:

> (i) All persons in the United States (ii) who within the Class Period[17]
> purchased or received a bicycle from a Walmart store or from
> www.Walmart.com (iii) and were injured while riding said bicycle (iv)
> due to negligent assembly by Walmart (the "Class").

76.     Alternatively, Mr. Johnson, Ms. Stone, and Mr. Cenac bring this action on behalf of the following class: (i) All persons in the State of Florida (ii) who within four years prior to the filing of this action purchased or received a bicycle from a Walmart store or from www.Walmart.com (iii) and were injured while riding said bicycle (iv) due to negligent assembly by Walmart.

---

[15] http://www.clickorlando.com/news/store-assembled-bikes-fail-safety-inspection_20151105195406586.
[16] http://kdvr.com/2014/12/11/major-retailers-put-to-the-test-when-building-bicycles-for-kids-to-safety-standards/.
[17] "Class period" is defined as the respective state's statute of limitations. For example—Florida: 4 years. Fla. Stat. 95.11; Texas: 2 years. Tex. Civ. Prac. & Rem. Code § 16.003(a); North Carolina: 3 years. N.C. Gen. Stat. section 1-52); and Michigan: 3 years Mich. Comp. Laws § 600.5805(10).

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

77.     The following persons are expressly excluded from the Class: (1) Walmart and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

78.     The persons in the Class are so numerous that joinder is impracticable, and the disposition of their claims in this case and as part of a single class action lawsuit, rather than numerous individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent.

79.     Plaintiffs allege on information and belief based upon Walmart's size, the amount of bicycles sold by Walmart, and the amount of complaints posted on the internet regarding negligently assembled bicycles purchased at Walmart, that the class is so numerous that joinder of all members of the class is impractical as the class is believed to consist of thousands of members, with hundreds—if not thousands—of members in Florida alone.

80.     Plaintiffs' claims are typical of the claims of the Class they seek to represent. Plaintiffs are members of the Class.

81.     The members of the Class are ascertainable from Plaintiffs' description of the Class, using Defendant's records and/or records of third parties accessible through discovery

82.     There are numerous and substantial questions of law and fact common to all members of the Classes which predominate over any individual issues.  These common questions of law and fact include without limitation:

a.   The nature, scope and operation of Walmart's negligent bicycle assembly;

b.   Whether Walmart breached its duty to members of the class;

c.   Whether Walmart was negligent in maintaining adequate safety procedures

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

for its bike assembly;

    d.   Whether Walmart was negligent in training its employees and agents tasked with assembling bicycles; and

    e.   The proper measure of damages.

83.    Plaintiffs' claims are typical of the other class members, and are all based on similar facts and legal theories. Walmart's negligent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of each member of the Class were caused directly by Walmart's wrongful conduct. In addition, the factual underpinning of Walmart's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.

84.    Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

85.    Plaintiffs are members of the Class, and will fairly and adequately protect the interests of the class. Plaintiffs' interests in this action are antagonistic to the interests of Walmart, and they will vigorously pursue the claims of the Class. Plaintiffs have retained counsel experienced in handling actions involving personal injury as well as class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

86.    The undersigned has been certified as class counsel in multiple class actions in this District.

87.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Trial of Plaintiffs' and the Class members' claims

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

is manageable.

88.     There is no plain, speedy or adequate remedy other than by maintenance of this class action because many of the claims of the Class members are *relatively* small and economically unfeasible for the Class member to be able to obtain competent legal counsel.

89.     Plaintiffs are unaware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Without a class action, Walmart will likely retain the benefit of its wrongdoing and will continue a course of action, which will result in further damages.

90.     Plaintiffs request certification of a class under Rule 23(b)(3), Federal Rules of Civil Procedure for monetary damages.

## COUNT I –NEGLIGENCE

91.     Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 90.

92.     Walmart engages in the business of assembling and selling bicycles.

93.     Walmart had a duty to use reasonable care in the design, assembly, testing and inspection of the bicycles to ensure that the product was safe for any reasonably foreseeable use.

94.     Walmart breached its duty to Plaintiffs and members of the Class by:

   a.   Failing to properly assemble the bicycles in a safe manner;

   b.   Negligently failing to inspect the bicycles after they was assembled to ensure they were safe for purchase by customers;

   c.   Failing to properly train and supervise employees and agents in the proper and safe way to assemble bicycles;

   d.   Negligently failing to warn Plaintiffs and members of the Class of the aforementioned hidden and dangerous conditions, which would not have

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

been obvious to Plaintiffs or members of the Class using a similar bicycle; and

e. Selling the bicycles in a defective and unreasonably dangerous condition.

95.  Walmart had actual knowledge of the defects in its bicycle assembly procedures in that they had knowledge of prior accidents involving defectively assembled bicycles, and took no action to remedy the assembly, testing and inspection process. Walmart acted in conscious or deliberate disregard for the foreseeable harm its actions and omissions created.

96.  Plaintiffs' and the Class members' injuries were solely and proximately caused by the breach of duty, negligence, recklessness, willfulness, and grossly negligent conduct of Walmart and its agents and employees.

97.  As a direct and proximate result of Walmart's actions, Plaintiffs and members of the Class suffered bodily injury which resulted in pain and suffering, disability, and mental anguish.

98.  The above-described injuries occurred without any contributing negligence of any of the Plaintiffs or any intervening causes.

**WHEREFORE**, Plaintiffs, respectfully ask this Court to enter judgment against Defendant, WAL-MART STORES, INC. for:

a. An Order certifying this Class;

b. An Order appointing Plaintiffs as Class representatives;

c. An Order appointing Yechezkel Rodal as Class Counsel;

d. An amount of damages to be determined at trial;

e. An award of prejudgment and post-judgment interest to Plaintiffs and the Class;

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

f.   An award of court costs as provided by law;

g.   An award of punitive damages as provided by law; and

h.   For such other relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, hereby demand a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ *Yechezkel Rodal*
Yechezkel Rodal, Esq.
Florida Bar Number: 91210
*Attorneys for Plaintiffs and the putative Class*
Rodal Law, P.A.
3201 Griffin Road, Suite 203
Dania Beach, Florida 33312
Telephone: (954) 367-5308
Facsimile:  (954) 900-1208
E-mail: Chezky@Rodallaw.com

**Rodal Law, P.A.**
3201 Griffin Road, Suite 203 ● Dania Beach, Florida 33312 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com